## Ex Parte E. S. Beacom.

1. Habeas Corpus for Bail — Practice in this Court.— Being in custody under an indictment for murder, the appellant applied to the District Court for allowance of bail, and from the refusal of it appeals to this court.   The record shows conflicting testimony on the controlling questions of the case.   In view of the superior advantages of the court *a quo* to determine the comparative credibility of the conflicting witnesses, and because no error in its action is apparent, the judgment refusing bail is affirmed.

2. Same.— "Proof is Evident" in such cases if the evidence would suffice to sustain a verdict against the appellant of murder in the first degree.   If the evidence is of less efficacy the proof is not "evident," and bail should be allowed.

3. Same — Express Malice.— A sudden killing, though without apparent provocation or obvious motive, may be attended with such facts and circumstances as suffice to show that it was done with the sedate, deliberate mind and formed design characteristic of that express malice which distinguishes murder of the first from murder of the second degree.

HABEAS CORPUS on appeal from the judgment of the District Court of Kinney county, refusing bail. Tried below before the Hon. T. M. PASCHAL.

On March 22, 1882, the grand jury of Kinney county presented an indictment which charged that E. S. Beacom, the appellant, on December 12, 1881, of his express malice aforethought shot and killed one John Piggott. Being in custody under the indictment, the appellant sued out a writ of *habeas corpus* for the allowance of bail. On the hearing of the case the court overruled the application, and the applicant appealed.

That Piggott, the deceased, was fatally shot in the night of the date alleged in the indictment, and died within a very few hours after he received the injury, were facts fully proved and not controverted. The homicide occurred about midnight, and was the concluding incident of a drinking and gambling carouse in which the deceased, the appellant, and six or more other men were engaged. The locality of the homicide was "McCafferty's Supply-Camp" in the cañon of Devil's River, Kinney county. The "camp," it seems, was the abiding place or resort of men engaged in railway-construction, and it is deducible from the evidence that the deceased and the most of his companions were following that business. Deceased, appellant, two men named Bartlett and Hannan, with four or five others, occupied for the occasion a vacant or unfinished room convenient to the store-house or saloon from which they obtained their liquor. With cards and drinking, poetry and song, they prolonged their carousal until eleven or twelve o'clock in the night, when the harmony of the occasion was interrupted by a drunken altercation and collision between two of the party named Jackson and Thompson. Interference and general confusion ensued; some one of the party fired a shot, and deceased instantly told Beacom, the appellant, that he had shot

him.   In reply to the deceased, the appellant denied that he fired the shot.   Deceased, during the few hours which remained to him, repeatedly stated that he was going to die and that it was the appellant who shot him.   Two of the men present when the shot was fired corroborated the deceased's statement that it was fired by the appellant. Another one of the party was positive that it was fired by Hannan, and still another was equally certain that Bartlett was the man who did it.   One witness testified that there had been contention and ill-feeling between the deceased and appellant for some time previous to the homicide.   On the other hand there was testimony that the deceased had just offered employment to the appellant, who had deferred an answer until the next day.

Joe Ware, one of the witnesses who testified that the appellant was the man who fired the fatal shot, stated further that later in the night of the homicide, and again the next day, the appellant and Hannan came to him and warned him not to say anything about who killed Piggott, and threatened to kill him if he did.

Bell, one of the witnesses who did not know who fired the shot, stated that the appellant, soon after it was fired, asked him if he knew anything about the affair, and, on witness replying that he did not, said to witness that it would not be good for him if he did, and told him to keep everything silent.   And the next day the appellant came and told witness that if he knew anything he had better keep it to himself.

Pete Long, a boy who ran out of the room just before the shot, testified that the appellant told him the next day to say that the shot came from the outside, if he was asked who fired it.

It was in proof that Bartlett was the person first charged with and apprehended for the homicide.   And it also appears that Joe Ware was at first accused of complicity in the offense.

*Walton & Hill,* for the State

*H. Chilton,* Assistant Attorney General, and *H. M. Holmes,* for the appellant.

WILLSON, J.　We have given to this case a careful consideration.　The evidence and the law applicable thereto have been ably presented and discussed by the appellant's counsel, and the attorney general.　The court is still of the opinion that the application for bail must be refused.　It would not be proper for us to discuss the facts of the case, further than to say that in the opinion of this court the evidence adduced on the part of the State, if believed, is sufficient to show a homicide committed by appellant upon express malice.

In *McCoy* v. *State,* 25 Texas, 33, it is said: "However sudden the killing may be, if the means used, or manner of doing it, or other external circumstances attending it, indicate a sedate mind and formed design to kill, or to do great bodily injury, and a murder be committed, it will be upon express malice.　In such case, if it appeared that the means used were likely to kill or do great bodily harm, endangering life, and a killing took place, the natural inference would be that it was upon express malice, unless it was attended with such circumstances as showed an absence of such formed design, or as showed the act to be the result of an indeliberate, rash, sudden impulse or passion;" and again, in concluding the opinion in that case, it is said: "It may be concluded then, in determining whether a murder has been committed with express malice or not, the important questions are: do the external facts and circumstances at the time of the killing, before or after that time, having connection with it, or relation to it, furnish satisfactory evidence of the existence of a sedate, deliberate mind, on the part of the person killing, at the time he does the act? Do they show a formed design to take the life of the person slain, or do

him some serious bodily harm, which in its necessary or probable consequences may end in his death; or such general, reckless disregard of human life, as necessarily includes a formed design against the life of the person slain? If they do, the killing, if it amount to murder,. will be upon express malice."

In the case before us the external facts and circumstances, as developed by the evidence, both at the time of the killing and immediately thereafter, are, if true, in our opinion amply sufficient to establish satisfactorily a sedate, deliberate mind, and a formed design on the part of appellant to kill the deceased. The evidence in the case is conflicting, and the conflict relates to the most material questions. Two witnesses testify positively that appellant did not do the killing, but that it was the act of other persons. If appellant's testimony is true, he is not guilty of the homicide. But the witnesses were all before the judge who first heard this application for bail, and he was in a far better situation than we are to determine as to the credibility of the witnesses. It would be only in an extreme case,— a case where it was evident to us that the judge below had erred,— that this court would revise the judgment of the judge before whom the case was originally examined, upon the matter of a conflict of evidence and the credibility of witnesses. (*Drury* v. *State*, 25 Texas, 45.)

In *Ex Parte Foster*, 5 Texas Ct. App. 625, the rule for determining whether or not bail should be granted, is prescribed as follows: To refuse bail in all cases where a judge would sustain a capital conviction, if pronounced by a jury, on such evidence of guilt as is exhibited on the hearing for bail. To admit to bail, where the evidence would not sustain such conviction. And again in the same case it is said: "If the evidence is clear and strong, leading a well-guarded and dispassionate judgment to the conclusion that the offense has been commit-

ted; that the accused is the guilty agent; and that he would probably be punished capitally if the law is administered, bail is not a matter of right."

The motion for rehearing is overruled.

*Affirmed.*